UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 13 |
| Berlinda Good, | Case No. 16-54035 |
| a/k/a Law Offices of Berlinda Good, | Hon. Phillip J. Shefferly |
| Debtor. / | |

**OPINION AND ORDER GRANTING SECOND APPLICATION
FOR DEBTOR'S ATTORNEY FEES AND EXPENSES**

On October 13, 2016, Berlinda Good ("Debtor") filed this Chapter 13 case. On June 12, 2017, the Court confirmed the Debtor's plan. On June 18, 2017, the Debtor filed an adversary proceeding against Educational Credit Management Corporation ("ECMC") under § 523(a)(8) of the Bankruptcy Code, seeking to discharge over $223,000.00 of student loans that the Debtor took out to pay for law school and for her daughters to go to college. The complaint alleged that the Debtor is 66 years old, has custody of three grandchildren under the age of seven, has substantial debt owing to the Internal Revenue Service, and that repaying her student loans owing to ECMC would impose an undue hardship on her and her dependents.

ECMC answered the complaint and filed a motion for summary judgment. The motion was supported by excerpts of the Debtor's deposition testimony, as well as

numerous tax returns, bank statements, and other documentary evidence. The Debtor filed a response, which was also supported by excerpts of her deposition testimony, documentary evidence, and affidavits.

On April 3, 2018, the Court denied ECMC's motion for summary judgment in a bench opinion in which the Court identified various material issues of fact that are in genuine dispute. Following the Court's bench opinion, the Debtor and ECMC agreed to dismiss the adversary proceeding, without prejudice, so that the Debtor could pursue an income based repayment program with ECMC, putting aside for the time being the question of whether the Debtor's student loans are non-dischargeable under § 523(a)(8).

On April 17, 2018, the Debtor's attorney, Kurt O'Keefe ("O'Keefe") filed a second application for attorney fees and expenses ("Second Application") (ECF No. 84). The Second Application notes that O'Keefe was previously awarded fees and expenses in the amount of $7,106.62 through confirmation of the Debtor's plan. The Second Application seeks an award of post-confirmation fees in the amount of $11,270.00 and expenses in the amount of $253.19. The vast majority of these fees and expenses relate to services performed in prosecuting the adversary proceeding against ECMC. On May 8, 2018, the Chapter 13 Standing Trustee, David Ruskin ("Trustee") filed an objection ("Objection") (ECF No. 87). On June 4, 2018, O'Keefe

filed a response (ECF No. 91). On June 5, 2018, the Court held a hearing on the Second Application. The Court took the Second Application under advisement and is now ready to rule on it.

The Objection contains numbered paragraphs, but basically boils down to two principal arguments: first, O'Keefe's hourly rate of $350.00 per hour is excessive; second, the services performed by O'Keefe in connection with the adversary proceeding are unreasonable and excessive, because the adversary proceeding did not have any reasonable likelihood of being successful under the prevailing case law regarding § 523(a)(8), and provided no benefit to the Debtor or the Debtor's creditors. During the hearing, the Court overruled the Trustee's argument regarding O'Keefe's hourly rate. The Court will now address the Trustee's other principal argument.

The Trustee correctly points out that the adversary proceeding did not result in a judgment in the Debtor's favor. As noted above, the Debtor and ECMC agreed to dismiss the adversary proceeding without prejudice to the Debtor's right to refile it in the future. Without a favorable and complete adjudication, the Trustee argues that the Debtor and the Debtor's creditors did not receive any benefit from O'Keefe's services in the adversary proceeding. The Debtor still owes the student loans to ECMC and is no further ahead than when she filed the adversary proceeding. According to the Trustee, O'Keefe should never have brought the adversary proceeding in the first

-3-

place because the Sixth Circuit Court of Appeals in In re Oyler, 397 F.3d 382 (6th Cir. 2005), adopted what is known as the Brunner test for dischargeability of student loans. Under that test, a debtor seeking to discharge a student loan must prove that the debtor cannot maintain a minimal standard of living based on current income and expenses; that additional circumstances exist indicating that this state of affairs is likely to persist; and that the debtor has made a good faith effort to repay the student loans. Id. at 385 (citing Brunner v. New York State Higher Educ. Serv. Corp., 831 F.2d 385 (2d Cir. 1987)). Measuring the Debtor's income and expenses against this standard, the Trustee argues that there is no way the Debtor could have been successful in the adversary proceeding and that O'Keefe, an experienced Chapter 13 bankruptcy attorney, should have known that.

O'Keefe counters that the Debtor hired him not just to file a Chapter 13 case, but to file an adversary proceeding to address her student loans – by far her largest debts. What's more, the facts regarding the Debtor's income and expenses that existed at that time suggested to him that the Debtor had a reasonable likelihood of prevailing in the adversary proceeding. O'Keefe points out that he has successfully brought other § 523(a)(8) cases. Based on the Debtor's age, dependents, health, and other financial circumstances, as well as his own past experience in handling these

types of cases, O'Keefe argues that he reasonably believed that he could be successful in the adversary proceeding, even under the controlling case law.

While O'Keefe acknowledges that he ultimately agreed to dismiss the adversary proceeding without prejudice, he explains that he did so for three reasons. First, he says that the Chapter 13 trustees in the Eastern District of Michigan have historically objected to separate classification of student loan claims in Chapter 13 plans, but no longer do so. If this had been the policy of the Chapter 13 trustees in this district prior to filing the adversary proceeding, O'Keefe concedes that he might not have filed it, and might have pursued a different legal strategy. But the trustees' change of policy, according to O'Keefe, occurred after the adversary proceeding was filed. Second, the Debtor's financial circumstances at the time that he filed the adversary proceeding also changed. Specifically, the Debtor, without O'Keefe's knowledge or approval, entered into a lease for office space for $450.00 per month after the adversary proceeding was filed, thereby undermining O'Keefe's contention that the Debtor cannot maintain a minimal standard of living based on current income and expenses. Had that fact existed at the time the adversary proceeding was filed, O'Keefe states that he may not have filed the adversary proceeding. Third, during the course of the adversary proceeding, O'Keefe discussed with ECMC the possibility of an income based repayment program. Because the Debtor has now applied for that program, it

is no longer necessary, at least for now, for O'Keefe to continue to prosecute the adversary proceeding.

In sum, O'Keefe argues that the Court should not measure the benefit of his services for the Debtor solely by looking at the results obtained in the adversary proceeding, but should instead consider whether those services were reasonably likely to benefit the Debtor at the time that such services were performed. Finally, O'Keefe notes that the Debtor does not object to his requested fees, and even the Trustee does not object to the amount of time that O'Keefe spent on his services, but only that he did not obtain a favorable result in the adversary proceeding.

The Court's analysis starts with § 330(a) of the Bankruptcy Code and the lodestar method from Boddy v. United States Bankruptcy Court (In re Boddy), 950 F.2d 334 (6th Cir. 1991). The lodestar amount "is calculated by multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended." Id. at 337. As noted, the Court already ruled that O'Keefe's hourly rate is reasonable. That leaves the question of the number of hours reasonably expended.

This is not an easy call. If measured solely by the results obtained, the Trustee is correct that the adversary proceeding did not produce a tangible benefit to the Debtor by obtaining a judgment of dischargeability. No doubt, results are important. But results are not the only thing the Court looks at under § 330 of the Bankruptcy

Code when determining whether a lawyer's services in prosecuting litigation for a debtor are compensable. See In re McLean Wine Co., 463 B.R. 838, 848 (Bankr. E.D. Mich. 2011) ("The pertinent question is not whether the services performed by the professional conferred an actual benefit upon the estate; but whether, when viewed under the circumstances in existence at the time, the services were reasonably calculated to benefit the estate."). Rather, the Court looks at all of the circumstances that existed at the time that the lawyer performed the services. In doing so, the Court must "resist the temptation to engage in 20/20 hindsight, and focus instead on facts known (or which should have been known) to the applicant at critical points during the pendency of the case." Id. (quotation marks and citations omitted). See also Norcross Footwear, Inc. v. Gannott (In re Red Ball, Inc.), 157 F. Appx. 850, 852 (6th Cir. Dec. 5, 2005) (noting that "it is not fair to judge the necessity of [legal services] with the benefit of hindsight" even when an attorney's "efforts later turned out to be largely unproductive").

To be reasonably calculated to benefit the estate, or in the case of Chapter 13, to benefit the debtor, "the services rendered must relate to a realistically obtainable goal." In re Williams, 378 B.R. 811, 824 (Bankr. E.D. Mich. 2007) (quotation marks and citation omitted). If "a reasonable lawyer would have performed similar services in attempting to maximize" the benefit to a Chapter 13 debtor under the same

-7-

circumstances, the fees are "compensable regardless of the ultimate outcome." In re Value City Holdings, Inc., 436 B.R. 300, 306 (Bankr. S.D.N.Y. 2010) (citation omitted). The court should "afford a degree of deference to the professional's decision so long as objectively reasonable at the time." In re Kennedy Manufacturing, 331 B.R. 744, 748 (Bankr. N.D. Ohio 2005).

When O'Keefe filed the adversary proceeding, he did so because his client wanted to address her student loans. At that time, there was no precedent in this district approving separate classification of student loans in a Chapter 13 plan nor, according to both O'Keefe and the Trustee, did the Chapter 13 trustees in this district approve of such separate classification. Apparently – and the Court has no reason to believe otherwise – there has been some recent change in the policy of one or more of the Chapter 13 trustees regarding this issue. The Court does not have any independent knowledge of any change in the trustees' position, and the Court itself has not yet ruled on this issue, but O'Keefe and the Trustee seem to agree that there was a recent change in policy. That fact supports O'Keefe's contention that he might not have filed this adversary proceeding had that policy been adopted previously.

According to O'Keefe – and the Trustee does not argue otherwise – when she filed the adversary proceeding, the Debtor had no other viable option to deal with the student loans that she owed to ECMC. The Debtor's sole recourse was to seek a

16-54035-pjs    Doc 93    Filed 06/15/18    Entered 06/15/18 12:37:02    Page 8 of 11

determination of non-dischargeability under § 523(a)(8). The Trustee is correct that Oyler and Brunner set an extraordinarily high bar for a debtor to prevail under § 523(a)(8), but the Court does not agree that it is a foregone conclusion that the Debtor would have lost the adversary proceeding. In fact, the Court ruled in the Debtor's favor and denied ECMC's motion for summary judgment because there were genuine issues of material fact in dispute in the adversary proceeding. At a minimum, that shows that the Debtor's adversary proceeding was not frivolous.

Further, it is well documented that student loans are an enormous problem in our country. Despite the fact that the Brunner standard has been adopted by most of the Circuit Courts of Appeal for a number of years, there is a substantial amount of scholarly attention currently being given to the question of whether the Brunner standard should be revisited. In light of the Debtor's age and other personal and financial circumstances, it was not unreasonable for O'Keefe to counsel the Debtor to bring an adversary proceeding under § 523(a)(8). Even if the Debtor could not ultimately succeed in meeting the Brunner test, the Debtor might convince the Sixth Circuit to reconsider the Brunner test. Admittedly, that's probably a long shot. But without any other viable options, it is not hard to understand why the Debtor would wish to take that chance rather than just resign herself to the fact that when she

finishes her Chapter 13 case five years from now, at 71 years of age, she would still owe $223,000.00, plus interest, to ECMC.

The Court does not believe that compensation should be awarded to a debtor's attorney under § 330 when the facts show that the debtor's attorney is tilting at windmills. But in view of the Debtor's age, health, financial circumstances and the current scholarly debate regarding the Brunner test, and considering the absence of viable alternatives for the Debtor to deal with her student loans at the time that she filed her adversary proceeding, the Court finds that the services rendered by O'Keefe in prosecuting the adversary proceeding were reasonably likely to provide a benefit to the Debtor at the time that the services were rendered. Further, the work that was done in the adversary proceeding, while not producing a judgment thus far, may still prove to have value going forward, depending on the outcome of the Debtor's application for an income based repayment program and possible plan modification. In any event, even if none of O'Keefe's work is used again in the future in this Chapter 13 case or in an adversary proceeding, the Court still finds that the work was reasonably likely to benefit the Debtor at the time that it was performed. Accordingly,

**IT IS HEREBY ORDERED** that the Objection (ECF No. 87) is overruled, and the Second Application (ECF No. 84) is granted.

**IT IS FURTHER ORDERED** that O'Keefe is awarded fees in the Second Application in the amount of $11,270.00 and expenses in the amount of $253.19.

**Signed on June 15, 2018**



/s/ Phillip J. Shefferly
_____
**Phillip J. Shefferly**
**United States Bankruptcy Judge**